*322 In Match 1793,
chancellor Rutledge
delivered the decree of the court.
This is a suit brought by the executors of an obligee, against the executors of a deceased joint obligor, the sur-Thing obligor being insolvent. For the defendant it was contended, that he was not liable, because the bond being joint, the survivor alone is chargeable. At law, the ob-ligee’s only remedy is against the survivor alone. In equity, the obligee has a remedy, and an equitable, though not a legal lien (claim) on the estate of the deceased obli-gor. It is objected that the surviving obligor (who is out of the state) should have been made a party. If the defendant would take advantage of this omission, he should have pleaded or demurred for want of parties; but the defendant having answered, he cannot now take advantage of it. It is not denied by the answer that the surviving obligors are insolvent, and that one of them is out of the state, if he is not dead. The case is reduced to a single question, whether, as there is no legal remedy for the ob-ligee, there is an equitable one: and undoubtedly there is— for though a joint obligation, the heirs and executors are bound by the bond, and must be answerable. It was also objected that the deceased (defendant’s testator) was only a security to this bond, and was not liable, because the obligee had varied the original contract by taking a new security, whereby the original security was discharged. The facts are as follow. The debt on the original bond was due on the 1st of January, 1780; it was notpaid. The enemy soon after got possession of the country, and did not evacuate it till December, 1782. In March, 1783, *323 the legislature interposed andpreventedsuitsbeingbrought for recovery of debts, but permitted the demand of seen-rity. One of the obligors was insolvent, and defendant’s testator, Livingston, was dead, and he had no representative here till 1784. The obligee was also dead, and his executor could not compel payment from Hepburn, ano-then of the obligors. They did what they deemed the next best tiling, which was to demand security under the law from Hepburn. He prevailed upon Mr. M'Qucen (then in possession of great property, and in high credit) to give, his bond on the 30th of November, 1783, as additional collateral security for the debt, not as payment, or the original bonds would have been given up; and the receipts on them shew- that they were not to be considered as discharged, until Mr. M‘Q,ucen’s bond should be paid. This caséis not therefore like Skip vs. Huey in Atkins, for there the original bond was given up; nor like the case of Ratcliffc vs. Graves, Yernon, 19G, where the ad-moil bond had been given up. The complainants in those cases did not obtain relief, the bonds having been cancel-led. In the case before the court, the security is not changed nor varied; not destroyed, but strengthened. — ■ The second bond from M4 Queen was a consolidation of principal and interest, and complainant obtained a more substantial security, by taking an assignment of a mortgage of real estate. A new idea has prevailed lately, that the security is not liable for the debt, till measures are taken to recover the debt from principal. But this is erroneous. A case solemnly decided in the common pleas has recently settled that point. And moreover, that taking collateral security, will not discharge the original security to a bond. It would be a harsh doctrine to be established. There is some blame imputable to complainant for not apprising defendant of the transactions with the collateral security; but not so much as to make him lose his debt. He has done nothing to forfeit it. He pursued reasonable measures to recover from M4Queen, and could get nothing but some lands. Referred to the master to report wliat is due on the bonds, and it is decreed that the defendant do forthwith pay the amount. And that there *324 upon, the complainant assign to defendant the bond and mortgage taken from M‘Queen as collateral security. — • Defendant to pay the costs of this suit. Afterwards, the defendant petitioned the court for a re-hearing in the cause, which was granted; and after argument, chancel-y lor Mathews delivered the following decree of the court:
IrBCEi.'E ROOK, p. 108.
The petitioner complains, that the former decree made *■ L executor of Livingston liable without a previous enquiry, whether the assets in his hands were adequate or not. No suggestion was made at the former trial of any apprehended deficiency; but as it is now brought forward, the court is disposed to open the decree to let in the executor of Livingston, to shew the extent of assets in his hands. And as it now appears that the executor of Shubrick had extended the time of the payment of the bond of Mf Queen, the collateral security, the court thinks it right to extend the. credit to the executor of Livingston to the same periods. But the court cannot, after the renewed argument, on the petition for re hearing, sec any ground to alter the first decree, as to the debt itself; either by releasing the estate of Livingston from the payment of any part thereof, or by restricting the liability of his estate to a mere contributory share.
It was decreed that the executor should submit the accounts of his administration of the estate to the master; and that he should pay out of the assets the amount of complainant’s demand • at certain periods fixed by the, court.